Robenson *vs.* J. B. Ross & Son.

---

GEORGE F. ROBENSON, plaintiff in error, *vs.* J. B. Ross & Son, defendants in error.

A landlord and tenant entered into a written agreement for the lease of a plantation, in the county of Lee, for the term of three years from the first of January, 1868, upon the terms and stipulations contained therein, as to what each of the contracting parties was to do and perform in the premises, and in which agreement it was expressly stipulated "that said lease, so made and entered into by the parties, shall cease and determine whenever either of said parties shall fail to carry out the stipulations of said agreement, or shall violate any of its provisions." The tenant, on or about the 23d of August, 1869, just about the time the crop on the plantation was maturing, notified the landlord in writing that he should consider and treat the agreement for the lease of the plantation as utterly void, on account of the landlord's repeated violation of it. Whereupon the landlord filed a bill against the tenant, alleging *his* repeated violations of the agreement, and performance thereof on *his* part, the insolvency of the tenant, and danger of loss to the landlord in consequence of the bad management of the tenant, praying for an injunction, and the appointment of a Receiver to take charge of the plantation stock, and crop growing thereon, etc., until the further order of the Court. The Court granted the injunction, and appointed a Receiver, as prayed for in complainant's bill, and upon a motion being made to dissolve the injunction and revoke the order

appointing a Receiver, on the coming in of the defendant's answer, the Court overruled the same: *Held,* that upon the state of facts contained in the record, this Court will not control the discretion of the Court below in refusing to dissolve the injunction and revoke the order appointing the Receiver to take charge of and secure the crop thereon, and other property, for the present year; but if, in the discretion of the Court below, it should be necessary to keep the property and plantation in the hands of a Receiver until the termination of the litigation between the parties, then it is the judgment of this Court that the complainants should be required to furnish all the necessary means and supplies to the Receiver to make a crop, and carry on the plantation for the ensuing year, as is specified in the written agreement for the lease of the premises, for the mutual benefit of the parties interested, as stipulated in that agreement, and in the event the complainants shall fail or refuse to do so, then that the order appointing a Receiver should be revoked and set aside.

Equity Practice.   Receiver.   Decided by Judge CLARK. Lee Superior Court.   September Term, 1869.

For the beginning of this strife see *Robenson vs. Vason et al.,* 37th *Georgia Reports,* 66.   After the judgment of the Supreme Court in that case had been made the judgment of the Court below, Ross & Son and Robenson began negotiations for a settlement of the matter as between them.   They entered into a certain agreement with him, (which does not appear in this record,) under which he seems to have kept possession of the Chehaw place, etc.   Ross & Son undertook to sell said Chehaw place, etc., under the power granted in the mortgage, but Robenson procured the military authorities to prevent them from perfecting said sale.   Subsequently, in May, 1868, they entered into the following contract:

"Said party of the first part, (Ross & Son,) have agreed with the said party of the second part, to lease to the said party of the second part the plantation of the said J. B. Ross & Son, in the 14th district of Lee county, known as the Chehaw plantation, together with the stock on said place, and other personal property belonging to it, for the period of three years, from the 1st day of January, 1868, on the following terms and conditions, to-wit:   The said J. B. Ross & Son agree to furnish to the said Robenson, for his use in cultivating said Chehaw plantation, the personal property of

every kind which they own on said place, and make advances
to said Robenson, in addition to those already made, of pro-
visions and other articles absolutely necessary in carrying on
planting operations on said place, to make a title to lot No.
17, of said Chehaw plantation to George F. Robenson, as
trustee for George B. Robenson, minor son of said George
F. Robenson : to insure the life of the said George F. Rob-
enson for the benefit of his said son, for $10,000 00, from this
date, or as soon as insurance can be affected, to the 25th day
of December, 1870; to give to said George F. Robenson the
privilege of purchasing said Chehaw plantation, with the
personalty upon it, for the amount paid by said J. B. Ross
& Son for the same, together with interest on said amount,
and any advances which may be due to the said J. B.
Ross & Son at the time of the purchase, said privilege of pur-
chase to continue until the 25th day of December, 1870, and
to pay to Messrs. Wright & Warren, on or before the first
day of January, 1869, one thousand dollars due them by
said Robenson, and to G. M. Stokes, of Lee county, on or
before the first day of January, 1869, five hundred dollars
due him by said Robenson. Robenson, upon his part, stip-
ulates and agrees :

1st. That he will pay for the rent of said plantation at the
rate of $800 00 *per annum*, from the first day of January,
last, $500 00 for rent, to be due on the 25th day of Decem-
ber, 1868, $1,100 00 on the 25th day of December, 1869,
$800 00 on the 25th day of December, 1870.

2d. That he will cultivate said plantation to the best of
his skill, take good care of the personal property on it, and
special care of the stock upon it, keep it under good fences,
and repair all the fences and houses on said place which need
repair.

3d. That all the cotton made upon said place, as long as
this lease shall continue, and for each year that it shall con-
tinue, shall be delivered by him at Wootten's Station to G.
M. Stokes, or some other agent of the said J. B. Ross & Son
whom they may designate, to be shipped as the said J. B.
Ross & Son may direct, and that the said J. B. Ross & Son

shall control said cotton, its shipment, and its sale absolutely, and appropriate the proceeds to the payment of any and all sums due them by said Robenson at the time of the sale of any of such cotton, for advances on any account made by them to said Robenson for rent, or for the repayment of any sum or sums of money paid by them, as hereinbefore stipulated, to Wright & Warren, and to G. M. Stokes.

4th. That said J. B. Ross & Son shall repay to themselves the amount paid by them to Wright & Warren, and to G. M. Stokes, out of said cotton, that they shall have a lien upon all the crops grown upon said place each year, during the continuance of said lease, for the repayment of their rent and their advances, and the repayment of any amount which they may pay under this contract to Wright & Warren, or to G. M. Stokes. The said Robenson will not create any other lien upon said crops, or any portion of them, except for the employment of laborers, with the knowledge, consent and approval of the said J. B. Ross & Son, to cultivate the same, and that if this lease shall terminate at the end of the first or second year, or at any time before the 25th day of December, 1870, the said Robenson will leave an amount of provisions on the place equal to that which was upon it when this lease began, to-wit: on the 1st day of January, 1868; and if it shall terminate on the 25th day of December, 1870, as stipulated in this contract, he will leave upon said place the same amount of provisions, and of the same kind and quality, which was on said place on the first day of January last.

5th. That the amount already advanced by said J. B. Ross & Son, since the 1st day of January last, and a payment of $250 00, made by them this day in cash, shall be considered as advances under this contract.

Finally. It is stipulated and agreed by and between the said parties, that the lease hereby made and entered into shall cease, and be determined whenever either of said parties shall fail to carry out the stipulations of this agreement, or shall violate any of its provisions."

A dispute arose as to the performance of this contract, and

Ross & Son filed their bill against Robenson, averring the foregoing facts, and that the agreement was made in a spirit of generosity, to enable Robenson to pay said notes, and that Robenson violated it; that Robenson's procuring the military interference with their attempted sale was in bad faith ; that this second agreement set out was made by them for the same generous purpose, after the military interference had been withdrawn, and after they had sold the property under the power of sale granted in said mortgage, and had purchased it for themselves, and upon their faith that Robenson would comply with said contract; that this contract was made soon after their purchase, and on the same day.   They aver that they did comply with the contract, but that Robenson fraudulently violated it, in that he had never paid the $500 00 rent for 1868, did not deliver them all the cotton made on the Chehaw place, had misappropriated the money, etc., furnished him under said contract; that though they furnished him more than was necessary to carry on the farm, he had wasted much of it in foolish extravagance; he had not attended to the farm, and owes them for advances made under said contract $7,000 00; that he is insolvent, and a spendthrift; that they have no means of securing their said advances but the cotton crop of 1868, and yet that, because he demanded more money, and they would not supply it, he notified them that he would treat said contract as utterly void.   They averred that this notice was given when the crop was about maturing, and with a fraudulent intent by Robenson to appropriate the crop to his own use; that part of it would necessarily go to the laborers, and they Ross & Son, ought to have the balance under said contract.   In order that they might get it, they prayed that Robenson be enjoined from disposing of any of the property, and that this farm be put into the hands of a Receiver, who should take care of the farm and stock, gather and sell the crops, and account to the Court.

To this bill was appended a statement of the account of Ross & Son against Robenson, from the 1st of January, 1869, to the 17th of August, 1869, amounting to $8,305 16, credited by "proceeds 11 bales cotton," 1st January, 1869,

$1,202 69,    There are $2,609 81-100 of this account cov-
ered by "merchandize" and "freights," without further
specifications; $2,533 46 is "balance from account of 1868"
without more; the remainder of the account is as follows:
"1869, January 1st, acceptance draft for mules, $1,600 00;
22d, paid Schofield $5 00; 26th, acceptance of Wheeler draft,
$228 27; March 1st, sight draft paid Stokes, $163 99; April
1st, stamps on deeds, $6 00; 15th, paid John Mosely $18 50;
17th, taxes paid by Stokes, $110 28; May 7th, cash $70 00;
31st, money advanced by Stokes, $150 00; June 21st, paid
Ramsey $30 00; August, 16th, 50 bushels corn at $1 25,
$69 30; 17th, note for renewal life insurance, $130 55; Aug.
17th, rent for 1868, $500 00."

On August 26th, 1860, without a hearing, the Chancellor
granted the injunction as prayed for, and appointed one Tyson
as Receiver, to take and keep said property till further order.
Robenson answered the bill.    He gave a history of the origin
of the $6,000 00 notes, stated substantially as in *Robenson
vs. Vason et al.*, 37*th Georgia Reports*, 66.    He said the terms
of the first agreement were fixed upon, but the agreement
was not executed, because some of the mules died, and all of
the corn on the place was burnt before its consummation.
Then Ross & Son attempted to sell the property under the
power granted in the mortgage, but the sale of the plantation
was stopped by the military order forbidding sales under
judgments, etc.    While they were so prevented from selling,
said second contract was executed in pursuance of a written
memorandum, agreed to between the parties, and in pursu-
ance of that memorandum, he allowed the property sold,
made his deeds and bills of sale to Ross & Son for the same,
and they gave him a written power of redemption; that no
money was paid to him at said sale, as purchase-money, but
that all this was but one transaction, and not intended for a
sale, but simply to secure Ross & Son's claims against him,
and was not made in a spirit of generosity, but because of
the difficulty of collecting debts; that Ross & Son were
anxious to secure themselves by giving credit.    He said that
he in good faith, tried to comply with the contract, but they

Robenson *vs.* J. B. Ross & Son.

furnished him provisions so scantily and so niggardly that he could only cultivate four hundred and fifty acres, when the understanding was, that he was to cultivate all of the farm, and they would not furnish him enough for tilling even that much properly ; that he had no wagon, no gin gear ; the fences, gin-house and negro-houses needed repairing, there was no crib for the corn, and Ross & Son knew these repairs were heeded when the contract was made, and after, and refused to furnish the money to make them, and thereby cut off the crop greatly. He said he delivered them all the cotton made in 1868, except what the laborers owned, sending them even all that was raised on his son's place. He answered that their account of 1868 was incorrect, but he could not say how, as they had not set out that account; as to the account of 1869, he said the $1,600 00 ought not to be charged to him, as Ross & Son held the titles to the mules, and claimed them as theirs; that $75 00 was paid Stokes for a pair of steers, which also belonged to Ross & Son ; that the $70 00 cash, and the $150 00 advanced by Stokes, was on an independant contract and independant security given by Robenson to Ross & Son, and that he was not bound for the $130 00 for insurance. He denied all fraud on his part, charged that Ross & Son fraudulently withheld supplies to ruin him, and said that he gave them the notice charged simply to protect himself, and with no intention to avoid paying their just claims against him.

He further averred, that the consideration of 'a part of said debt was slaves or their hire, and part was Confederate money, and part for taxes paid to the Confederate Government to carry on the late war; that there could be no recovery as to the two former, and only such amount as a jury may find as to the last; that he had lost much by the war, which Ross & Son aided in carrying on, and he claimed the benefit of the Homestead Act against any recovery they might have against him.

To this answer was appended, as an exhibit, copies of said memorandum and said contract, as to the privilege of redemption, as follows:

"This memorandum of an agreement between J. B. Ross & Son, of Macon, and George F. Robenson, of Lee county, witnesseth, that the said Robenson agrees to permit the said J. B. Ross & Son to sell his Chehaw plantation and the personal property on it, or appertaining to it, within the next ten days; and also his real estate on Flint street, in the city of Albany, within the same time, and to make titles to the said J. B. Ross & Son to all of said property. And the said J. B. Ross & Son agree, in consideration of said sale and conveyance to them, to enter into a contract with the said Robenson, similar in all respects to that which they now have with him, made January 28th, 1868, except that, 1st. Said lease shall be for three years, instead of two years, from 1st of January, 1868. 2d. The cotton made on said plantation shall be delivered to G. M. Stokes, as agent for the said J. B. Ross & Son, at Wootten's station. 3rd. The proceeds of the cotton shall be in each year applied to the payment of the advances of the said J. B. Ross & Son, and their rent, which shall be, for 1868, $500 00, for 1869, $1,100 00, for 1870, $800 00; and if the cotton does not realize a sufficient sum during the first year to pay advances and rent, the balance shall be paid out of the second year's crop, and if a balance be due after the sale of that crop, said balance is to be paid out of the third year's crop.

The Messrs. Ross will, by agreement, bind themselves, in lieu of what they bind themselves to do in said agreement of 28th January, 1868, to make titles to two hundred and two and a half acres of land, constituting a part of said Chehaw plantation, and being the lot agreed upon between William H. Ross and the said Robenson, in January last, to some one in trust for George B. Robenson, minor son of George F. Robenson, to insure the life of the said George F. Robenson, for the benefit of his son, for $10,000 00, until 25th December, 1870, to give said G. F. until 25th December, 1870, the privilege of redeeming said plantation, by paying the principal and interest due on said J. B. Ross & Son's mortgage on said place at this date, less $800 00, to pay Wright & Warren, by the 1st January, 1869, $1,000 00,

due them by said Robenson, and to pay to G. M. Stokes of Lee county, an amount, not more than $500 00, due him by the said George F. Robenson, by 1st January, 1869.

4th. The said parties will agree that said J. B. Ross & Son shall receive and control all the cotton made upon said plantation up to 1871, and sell the same and appropriate the proceeds, first to the payment of their advances, their rent and the amount expended by them in settling the claims of Wright & Warren, and of G. M. Stokes, as aforesaid.

5th. That said parties agree to leave out of the contract to be entered into by them, the stipulations in their contract of the 28th January, 1868, as said stipulations are inconsistent with the agreement which they propose to enter into, and the furnishing by Robenson of eight mules additional.

6th. The said Ross & Son, upon the delivery to them of the titles to the property to be sold, as aforesaid, and the execution of agreement, herein provided for, will pay $250 00 in cash to George F. Robenson, to be applied by him for the payment of supplies, and to be estimated as a part of the advance of said Ross & Son.

7th. That the agreement to be entered into, as herein provided, shall be terminated whenever either party shall fail to carry out said agreement, or shall violate the same.

This memorandum is designed simply to express the understanding of the parties, as to the contract which they have agreed to make, after the sale of said property." 

The contract was as follows: "It is hereby agreed that the sum of money for which George F. Robenson can redeem the Chehaw plantation, in Lee county, of J. B. Ross & Son, is the amount due in said George F. Robenson's mortgage debt to said J. B. Ross & Son, as transferees of Gilbert & Vason, with interest on said amount to the 1st day of June, 1868, less $800 00.

May 30th, 1868."

Upon the coming in of this answer, Robenson's solicitors moved to dissolve the injunction, and vacate the appointment of the Receiver, upon the grounds that the equity of the bill was sworn off, because, under the facts, there should not

have been any injunction, or Receiver, nor any Receiver at any rate, as injunction would be a complete protection to Ross & Son, and lastly because Tyson was an employee of Ross & Son, and therefore should not be the Receiver.

At the hearing, Robenson's solicitors read in evidence a letter, dated 30th July, 1869, from Ross & Son to Robenson, in which they wrote: " We are not in a condition to make any additional purchases for the plantation. We have to pay cash for wagons, and we haven't it to advance, and 'you must manage to get through this year with what you have. When the plantation gets out of debt, then we can afford to make additional expenditures, but for the present we cannot advance anything for the plantation, only what is absolutely requisite to feed the hands and mules." They also read a letter from Robenson to Ross & Son, dated August 17th, 1869, as follows: "I wish to have timber gotten out for cribs and will have to purchase lumber for the cribs, and also for other purposes, upon the plantation, and will have to hire a workman and hands to assist in doing the work. You will please send me $250 00, with which I will endeavor, by economy, to have done the work that is now necessary to be done * * * *. It is absolutely necessary that the work should be done at once, and I can not do without the money;".and the reply of Ross & Son, in which they said, " until wé receive from it (the farm) what is already due us, we must decline furnishing only necessary supplies." They also read Robenson's reply to this, in which he averred his own good faith, charges that they had acted fraudulently, to cramp him and render him unable to comply with his contract, and closed by saying that because of their failure to comply, he should "treat the whole arrangement, made in May, 1868, as utterly void, on account of your (their) repeated violation of it."

Besides said deeds and contracts, many affidavits were read *pro* and *con.* The affidavits in behalf of Ross & Son went to show that Robenson was enriching that part of the land belonging to his son, at the expense of Ross & Son, that he had not taken proper care of the stock, fences, etc., that he only saved part of the corn crop, and that that part was

Robenson *vs.* J. B. Ross & Son.

damaged, that Stokes had furnished Robenson for Ross & Son about $1,200 00 in merchandize. In reply, Robenson produced Stokes' account, up to July 26th, 1869, that the Chancellor might see the articles bought, etc., and affidavits of various persons to show that the said repairs were necessary to the carrying on said farm and housing the crops, that rails were split but could not be hauled, for want of a wagon, and that so soon as the Receiver took possession he had built the crib which Robenson desired to build, etc.

Argument was had, and the Court refused to dissolve the injunction, or to remove the Receiver. This refusal is assigned as error. Whether the Receiver was an employee of Ross & Son did not appear. He was shown to have been the clerk of Stokes, and he certifies this record as Clerk of the Superior Court of said county.

WRIGHT & WARREN, F. H. WEST, for plaintiff in error, cited Irwin's Code, secs. 265, 3043, 3092, as to Receivers; secs. 3149, 3153, as to injunctions, and to show that this contract was a mortgage; Robenson vs. Vason *et. al.*, 37th Ga. R., 66, and 9th Ga. R., 151.

W. A. HAWKINS, NESBITS & JACKSON, for defendants.

WARNER, J.

On the state of facts disclosed by the record in this case, we will not control the discretion of the Court below in refusing to dissolve the injunction, and revoking the order appointing a Receiver to take charge of and secure the crop and other property on the plantation, for the present year; but if, in the discretion of the Court below, it should be necessary to keep the property and plantation in the hands of a Receiver until the termination of the litigation between the parties, then, in our judgment, the complainants should be required to furnish all the necessary means and supplies to the Receiver to make a crop, and carry on the plantation for the ensuing year, as is specified in the written agreement for the lease of the premises, for the mutual benefit of the parties

interested, as stipulated in that agreement; and in the event the complainants shall fail or refuse to do so, then, that the order appointing a Receiver should be revoked and set aside.

Let the judgment of the Court below be affirmed.